We're here this morning and I want to just start out with what is the legal decision in front of this court. Van Bergen is a decision whose analysis has been superseded by subsequent Supreme Court precedent. Citizens United, a decision issued in 2010, made clear that the Supreme Court considers discrimination on the basis of the identity of the speaker prohibited. And following up on that, in Reed v. Town of Gilbert, a 2015 decision, the Supreme Court reaffirmed what it said in Citizens United, which is that statutes that discriminate on the basis of the content of speech or the identity of the speaker, which often serves as a proxy for content. In Reed v. Town of Gilbert, the Supreme Court reaffirmed what it said in Citizens United, which is that a statute that discriminates on the basis of content of speech or on the basis of the identity of the speaker, which often serves as a proxy for content, is subject to strict scrutiny. If we disagree with your view that the Supreme Court's Reed case has somehow invalidated our own Eighth Circuit precedent, wouldn't the existing Eighth Circuit precedent essentially decide this case? It would, but you can't look at Van Bergen without looking at Citizens United and Reed. If this case were before this court without the prior decision in Van Bergen, there's little doubt that the framework laid out by the Supreme Court in Citizens United and Reed would control the analysis here, and the statute would be subject to strict scrutiny. And respectfully, the decisions of this court, the Van Bergen decision of this court, used a mode of analysis that's inconsistent with later Supreme Court opinions, and therefore can't be relied on going forward. The district court here even erred by not considering Citizens United and what it had to say about speaker-based discrimination. This statute, help me understand your argument in the context of this particular statute, because this statute, it's not just against your client. That's correct. It's a manner of contacting folks through this, what I'll call, robocall. Well, what it does is, it actually is a ban on robocalls unless you meet one of the exceptions, and the exceptions are both content-based and speaker-based. If you are a public school district, you can make a call using an automated dialer, using a robocall, to anyone for any subject. But if you're a Catholic school, or a charter school, or a college or university, you can't, because you don't meet the definition of the state's definition of a favored speaker. What about if the school exception, my understanding is that our court previously said that was based on the relationship between the caller and the recipient. What if it's under the statute, if your child goes to a Catholic school, can the Catholic school call? I don't think so, because it doesn't fit the school district exemption. A Catholic school is not a district. It's deciding that certain speakers, namely in this case school districts, the state has decided that school districts are going to say things that people want to hear. Similarly, if you look at the current business or personal relationship, here a debt collector or a person called by a business, but a city council member or a state senator or a congressman or a US senator who represents somebody can't make the same kind of phone call. Because the state has decided that somehow businesses that have some kind of business relationship with someone are a favored speaker. Then you get to the next two exemptions that are clearly content based. And this court, even in Van Bergen, recognized that the next exception was content based, which is employers can call employees about work schedules. And the court in Van Bergen acknowledged it was content based, but then said, but we're going to rely on Ward and look at the underlying purpose of the statute to conclude that it was not content based. The Supreme Court in Reed made very clear that what the court was saying in Ward was only applicable if the statute was facially content neutral. Where the decision in Van Bergen is inconsistent with later Supreme Court opinions is its reliance on the purpose of the statute, that the court would analyze this under the neutral time, place, and manner restrictions of intermediate scrutiny versus the narrowly tailored compelling interest analysis of strict scrutiny, which the Supreme Court later made clear is required in this case. Does Gresham want to contact his employees about things other than work schedule? No, Mr. Gresham in Conquest Communications makes calls on behalf of their clients who are very often political candidates, political parties, or other entities interested in the public policy arena. So they want to- I understood that, but so your client's not concerned about the restriction that you can only advise employees of work schedules. He doesn't want to robocall his own employees to talk about the matters you just mentioned. No, but the presence of the content-based exception is what, the presence of the exceptions based on identity of the speakers and the content of the speech are what make the complete statute unconstitutional. If the state wanted to prohibit robocalls just flatly for everybody, I don't think we'd have a claim here. When they say it's flatly prohibited unless you are a specific type of speaker or specific speaker or you're making a call on specific content, that's where the overall statute becomes unconstitutional. Well, do you think there's any problem with an exception for consent? If there was a ban, but they said if you had prior express consent, would that be a problem? No, I don't think that would be a problem, because that would be based on essentially someone saying, yes, you can call me. It's not the state deciding that certain speakers are favored. That's saying, I give you, Judge College, permission to call me using an automated dialer. And what are these examples of exceptions, essentially, either where consent has been given or implied? Well, but here's the thing. This is where the state is deciding that certain speakers are favored. So, for example, look at the school exception. In the school exception, the state has decided that school districts, but not charter schools or can't make these calls, because they're not one of the favored kinds of speakers. If the statute said, clowns and tailors could make phone calls, but butchers and boiler makers can't make calls, that would clearly be unconstitutional. And that's essentially what they do here without using those same words. What they're saying is, we, the state, are going to decide what kind of messages we are going to imply consent to. And the kinds of messages are based on the identity of the speaker. In other words, the state has said, the school districts are a favored kind of speaker. Business, where you have a prior business relationship, and they don't limit this. This could be debt collectors. This could be- Is the record sure if there are any kind of agreements between parents and school districts about receipt of robo calls? There is nothing in the record that suggests that there's any kind of agreement other than the statutory or this state based decision that we're going to permit these kinds of calls for this particular kind of favored speaker. There's nothing in the record or nothing that has been produced by the Attorney General's office that has defended the statute on that grounds. And because the statute favors these particular speakers and has content based exceptions, the statute needed to be evaluated by the district court under the lens of strict scrutiny. And the district court should have recognized that the later decisions in Van Bergen, or sorry, the later decisions in Reed and Citizens United essentially abrogated what this court, the mode of analysis that this court applied in Van Bergen. And for that reason, strict scrutiny should apply. Once strict scrutiny- Because you say that the implied, what the state calls implied consent, exceptions are content based, or is it for some other reason? Well, I think what we're saying is, what the Supreme Court made clear in Citizens United, and the statute it issued in Citizens United was one that said, this particular kind of speaker can't engage in this kind of speech. And the Supreme Court said, statutes that discriminate on the basis of the identity of the speaker are most often a means to control content, and that's exactly what the state has done here, which is- Question more on the basis of the identity of the recipient and not the speaker. No, I think in this case, the statute is really based on the identity of who's making the call. It doesn't say, customers may receive calls or people who pay membership dues to an organization may be called. It says, businesses may make calls, or the following speakers may make calls without getting the live operator consent. In this case, school districts may make calls without the live operator consent to these particular people. How is that a means to control content? It doesn't seem to restrict what the school district can talk about to the parents or what the people with current business relationships can speak about. Because by exempting those particular speakers, you're disfavoring other kinds of speakers. So a school district could make calls to students, employees, and parents, and say, don't support the legislation that's pending in the state capitol. And at the same- But you said that favoring certain speakers over others is a means to control content. That's what the Supreme Court said. Yes, and that was your argument. Right. I'm asking, how is this a means to control content? Because by choosing favored speakers, the state is implying consent based on the messages that they anticipate they're going to deliver. And if you read the briefings from the Attorney General, what they say is, we the state are implying this consent because we think that parents, teachers, and students are going to want to hear recorded messages from their school board. Or that customers of businesses are going to want recorded messages from anyone that they have a business relationship with. Now, of course, the way the state has interpreted that is that a member of a political party or a donor to a political party or someone who voted in a political party's primary or someone who's represented by an office holder can't be called by that office holder or that political party because they don't fit under the state's favored business relationship exemption. They've got a different kind of relationship that isn't a favored relationship. And what that really is is discrimination on the basis of the identity of the speaker. And again, what you- You're identifying, you're saying it's the state that's deciding the relationship. I think that prior to the case, the idea was the school district and the parents and the students agreed, that was consent. What I hear you saying is, no, it's the state saying, no, we like this relationship, so we're going to go ahead. Right, the state is blessing certain relationships. It's blessing the relationship between a school district and parents, students, and teachers. But not other kinds of schools or other kinds of educators and their parents, students, or teachers. It's blessing business relationships over other kinds of relationships like affiliations with the political party or the relationship between an office holder and their constituents. It's blessing particular relationships based on the identity of the speaker. So you agree that there is a relationship between school, contact, employer, and local. So you're saying that the relationship, you just think that they shouldn't just pick and choose who knows? I'm saying what they're doing when they're choosing those relationships, they're starting with who is making the call. And that's making the selection on the basis of the identity of the speaker. And I see that I'm into my rebuttal time, so I'd like to reserve that. Thank you, Mr. Torchinsky. Thank you. Mr. Oliver, or excuse me, Mr. Larson. I know there's a switch. There we go. Good morning, your honors. I'm going to spend some time talking about the patriotic veterans case. But before we get there, I did want to do a little clean up on some of the issues that have been raised today in oral argument. One of those issues is, could a Catholic school do robo-calling? I think the answer to that is yes, and that would be under the second exemption. So if you're sending your kid to a parochial school, there's an established relationship there. Probably you're actually going to be writing them checks in addition to just the fact that there's an established relationship by the fact that you've placed your child into that school. I think the same would even be true of a charter school. If you're pulling your child out of public schools and making a selection to place them into a charter school, there's going to be an established relationship there that I think would qualify under the second exemptions. So, I don't know how relevant that is, but one of the things I heard from the plaintiff here was that a vendor of a ham sandwich could call you under the second exemption. Well, certainly if the vendor of a ham sandwich can call you under the second exemption, a Catholic school or a charter school, or a place where you placed your child, or a university that you're writing checks to, would be able to make a robo-call. So I don't think there's any reason to infer there that there is some kind of selection being made to favor public schools over charter schools, over Catholic schools, or et cetera, you know, the exceptions work together. What about what would seem to favor one charity above other charitable organizations that might wish to robo-call? You're talking about the veteran's exemption now. Exactly. What I will say on the veteran's exemption is that the district court resolved that on the basis that it was severable. The plaintiffs have not appealed the district court's decision that that provision is severable. I don't think the court needs to even get into it. We did, and if you want to go back and look at it in our opening brief at the preliminary injunction stage, we did brief that, we acknowledged that that would be a content-based exemption, because it's limited to a specific speech on a specific topic. And we gave a defense of that. I don't think you need to reach that issue, nor do I think you should, particularly as we're up here on a preliminary injunction. And they haven't appealed the issue of whether that is severable from the statute as a whole. Let me talk a little bit about the- About the question of implied consent and why you think it's permissible for the state to designate certain categories where it believes that consent is implied. But omit other categories where there might be a reasonable argument that consent is implied, like a political party with people who've registered with the party, say, or voted in the primary. What I will say on that is that it's just not a content-based distinction, so it doesn't get us into the strict scrutiny type of analysis. So let me take a step back from that. There is a case law out there, federal court, supreme court, and otherwise, that discusses essentially situations in which a selection of a particular group of people by their identity is really a proxy for content. So for example, in the Reed case, if you had a statute that said churches can put out signs, but other folks can't. Well, that's a pretty strong proxy that what you're favoring is a sub-religiously based speech over other types of speech. Now here, the distinction is that courts have found that when you imply relationships between, let's say, a school district and a parent, or imply a relationship between a business that has an established business relationship with someone. Nothing in that infers that what the state is really trying to do is prescribe content. And Van Bergen addresses that directly. I suppose the counter to that might be, yeah, it does. Like your church example, it implies that the state favors communications about educational related matters or about commercial matters over political matters. Why isn't that an inference to be drawn? It is not, because I think if you look at the cases that address this distinction, it's been applied in very limited circumstances, where a court will infer that the identity of the speaker is really a proxy for the content of the speech. The leading case on that, and I frankly forget the name of it, but it's the case involving the Santeria religion out of California, where they prescribe basically the butchering of chickens within the city limits. And it was clear, if you went back and read through the legislative history of that city ordinance, that what it was really directed at was not concerns about people butchering chickens within the city limits. What it was really concerned with was discouraging the Santeria practice, that religion. So it was a proxy, the identification of a practice was really a proxy for content. Van Bergen and his successors, even at the Supreme Court, even in Reed, what Reed says is it doesn't knock down Ward. It says that only if the distinction that you're making on the basis of identity can really only be explained by the content of those speakers. That was the only, in that scenario, we will then infer there's a content-based distinction and apply strict scrutiny. But if what we see is instead that the distinction being made on identity is grounded in some non-content-based distinction, then we're going to treat it as being a non-content-based distinction. And so here, this court in Van Bergen said, there are good reasons why you would say that it's okay for entities with established relationships with people to engage in robocalling that you would not infer in a situation in which the two parties are strangers to one another. And the two leading reasons for that would be first, one that you would infer that a person receiving a robocall from their school district or from somebody with whom they have an established business relationship is less likely to be unwanted. That was part of the analysis. The other part of the analysis that's right there in Van Bergen is the idea that it's much easier for somebody who's receiving unwanted robocalls from an entity with whom they have an established relationship to stop it. In other words, they know how to call their school district or their principal or whoever it is and say, stop robocalling me. I don't want these calls. Whereas if they're receiving robocalls from an entity with whom they have no relationship, it is a more difficult task. Van Bergen found that those were legitimate reasons, non-content-based reasons to say that you would favor certain types of identity-based distinctions that really are not proxies for content. So I think if you read together with Van Bergen, what you see is it remains outside the strict scrutiny analysis to make these distinctions based on identity, as long as they're not really just squarely a proxy or a, you know, basically a way of trying to get around the content-based distinction by identifying a group rather than prescribing the actual content of the speech. The other thing that I'd like to focus on then is the patriotic veterans decision from the Seventh Circuit, because we weren't able to brief that to you. It came in after the briefing. I just want to basically kind of give a top-level view of that case. I think one of the things to observe about that case is just how short it is. You know, it's a six-page opinion. And I think both in that case and the case in front of you, the plaintiffs in that case and the plaintiffs here are trying to inject a lot of complexity into this case. You know, they provide 80 pages of briefing to you. And in the patriotic veterans case, the Seventh Circuit was confronted with essentially the same issues, dealt with it in a six-page opinion, and really dealt with it with sort of a four-word sentence, in which they said, we don't get it, kind of a wonderful turn of phrase from Judge Easterbrook. And what the Seventh Circuit did in that case, I think, is the correct thing. It took the case back to root principles and said, what is the statute really about? What do we really have in front of you, or in front of us? And what you have in front of you is a statute almost identical to the Indiana statute at issue in patriotic veterans. And what the court there said is, look, what we have here is a time, place, and manner restriction that says that robocalls can only be done if you get some kind of prior permission, either explicit, by prior permission through writing, or by putting a live caller on the phone, or through some kind of implied consent, which are the three exemptions. But at root, it remains a time, place, and manner restriction subject only to intermediate scrutiny. And I think that that is essentially what should drive this court's analysis as well. That at root, what we're still dealing with here is time, place, and manner restrictions on the way in which robocalls are made. And one of the things that the plaintiffs argued to you just now was that this statute bans robocalls. It does not. It allows robocalls. It allows you to get prior permission to make robocalls. It allows you to accomplish a robocall by putting a live speaker on the telephone in front of the calling and obtaining permission that way. So it is not an outright ban on robocalls. And so it is really just a restriction requiring consent for that type of calls before they're accomplished. Maybe we should also think about the case this way. I mean, what separates Conquest or Mr. Gresham from a school district? It is not the content of their speech, right? What makes a school district different from Conquest or different from Mr. Gresham is that the school district has some kind of a relationship with the person they're calling. And Conquest and Mr. Gresham do not. And the school district can call about anything it wants. And Mr. Gresham is prohibited from making those calls no matter what the subject is that he wants to talk about. So he could plan to call and talk about the people, about politics, which is really what their business is. Or he could be planning to call them about something completely unrelated. He could be making a commercial call. It doesn't matter. The statute doesn't speak to what the content is of the call that Conquest wants to make. It doesn't speak to the content of what the school district is going to talk about. It speaks only to the distinction in their relationships. School district has a relationship with the person that it's calling. Conquest and Mr. Gresham do not. And we could flip this around. If Mr. Gresham or Conquest developed a list of people who were willing to receive robocalls, the school district couldn't call those people, right? The school district couldn't take advantage of the relationships that Mr. Gresham or Conquest has established independently and use that to make calls to those people to speak to politics or any other subject. Mr. Gresham would have, under your example there, he would have to actually get express permission? That's one of the two methods. Now it's an uncommon method, but the two primary methods by which you can get consent are explicit consent, would be either kind of a prior written consent, so if you were, let's say you were a political party, you could send out mailers to people and say, hey, can we send robocalls to you? Would you like to receive robocalls? And you could get explicit permission from people to do that. The other thing you can do is put a live caller on the phone. Now, if we were talking about a political party as well, if somebody had voluntarily signed up to become an actual member of, let's say, the Republican Party or the Democratic Party, I think they would also fall within that second exemption of implied consent. But your two exemptions don't require that explicit- No, and that's the distinction that's being made, is that certain types of relationships, the statute establishes really what is an implied consent to receive these calls, and for other types of callers requires explicit consent. And again, the distinction is not based on the content of what they want to talk about, or the content of what they're going to talk about. It's based on the nature of the relationship between the caller and the recipient. Which I think is, even under Reed, permitted, and Reed's very explicit on that point. Unless it's really a proxy for content, you can still make those kinds of distinctions. The only other point I will make, there was a discussion about what would happen if Van Bergen didn't exist. I mean, clearly it does, and as this court knows, it can't overrule another panel of the Eighth Circuit. So you would have to find, I think, a pretty explicit rejection of Van Bergen for this circuit, or sorry, for this panel to overrule Van Bergen. But I also want to pick up on a specific point. In dealing with the third exemption, employers calling their employees to talk about work schedules. Van Bergen deals with that in a footnote, and basically says it's irrelevant because they call them under the second exemption. The plaintiffs have argued that somehow all that analysis is relying on some line of cases that has now been rejected by Reed. That is not accurate. And we briefed this issue to you in our briefs, but I want to bring a little bit of nuance to this in this way. There was a split in the circuits before Reed. It's one of the reasons, I think, that the Supreme Court took Reed. Some courts had blessed the concept that you could prohibit speech generally in an area as long as you weren't picking a side. So you could pass a statute that says we're going to prohibit signage about whatever it is, political speech. So Republicans can't post their signs, Democrats can't post their signs, nobody can post signs. Some courts, some circuits looked at that and said that's fine because you're not picking a winner. The Eighth Circuit rejected that analysis in the neighborhoods case that we cited to you. So whatever Van Bergen was doing on this subject, it was not relying on this now rejected line of cases that was rejected by Reed. The Eighth Circuit has always held and was not doing anything in Van Bergen outside of this. They've always held that if you're making kind of area content based kind of analysis, that's subject to strict scrutiny. The way that Van Bergen dealt with the third exemption is by simply saying that you could do the speech anyways under the part two and so we're not really going to address whether the content distinction that appears in the third exemption is relevant or not relevant. So that remains good law. It's not something that was addressed in Reed, and it wasn't something that relied on any rejected analysis that was overturned by Reed. So with that, unless you have any questions for me, I think I'm set. I see none, thank you Mr. Larson. Mr. Cherchinsky, your rebuttal. Thank you, Your Honors. I want to start with the Neighborhood Enterprises v. City of St. Louis case. In that case, it was a sign-related ordinance. And what this court said was essentially the content-related exceptions to the statute merited remand back down to the district court to decide if the whole statute needed to fail or whether the statute could survive based on whether or not the exemptions were severable, which is similar to what you have here. You've got a statute that is a general ban, but then has essentially either content-based or identity-based exemptions. And those, when taken in whole, it's not clear and the state has not essentially presented an argument that those other exceptions are severable. In other words, what they would have to argue is that Minnesota would have passed a complete ban without the exceptions. And we think that the Neighborhood Enterprises case is actually very supportive of our position here. I also want to go back to what Mr. Larson sort of opened with in discussing established relationships. He used the phrase established relationships. When you look at the statute, it says, messages to subscribers with whom the caller has a current business or personal relationship. And what I heard him arguing to the court was that any kind of established relationship could imply that consent. That's not what the statute says, and despite the fact that that's what he's representing to the court here, the state could change its mind. In the political context, which is the context that Mr. Grasham and Conquest operate in, they make calls on behalf of political parties who have donors, who have supporters, who have volunteers, who have people who participate in their party's primaries. They make calls on behalf of office holders who have constituents. They make calls on behalf of candidates who have supporters and donors. If this statute was broad enough to allow calls to any of those kinds of established relationships, I think this would be a very different case. But that's not what it says here. The statute is something different than what Mr. Larson was presenting to this court. If any kind of established relationship permitted this kind of call to be made, I'm not sure we'd be here. But it's very limited to current business relationship. Not the broader kinds of relationships that Mr. Larson was suggesting might just imply consent here. And we think that's very, very important to how this court views this case. And lastly, just to address patriotic veterans, that decision is pending on petition for certiorari to the Supreme Court. The decision is really short, and I think that the Seventh Circuit got it wrong there because it didn't address, it failed to analyze the speaker identity arguments that we are presenting here in this case. And this court has not hesitated to disagree with the Seventh Circuit. I point you to the Minnesota Concerned Citizens for Life versus Swanson, contrasted with the Madigan case out of the Seventh Circuit on campaign spending. So this court has not hesitated to differ from the Seventh Circuit in the past, when it is believed that the Seventh Circuit's analysis was not complete. And so thank you very much. Thank you, Mr. Torchinsky. Court wishes to thank both counsel for your presence and argument. We'll take your case under advisement and render decision in due course.